UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JOE HAND PROMOTIONS, INC.,**

   Plaintiff,

v.                                                               No. 4:23-cv-00092-P

**7 STARS LIQUOR, LLC, ET AL.,**

   Defendants.

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment. ECF No. 13. Having considered the Motion and applicable law, the Court determines the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Armchair pugilists everywhere remember the November 28, 2020, bout between Mike Tyson and Roy Jones, Jr. Dubbed the "Lockdown Knockdown," the pay-per-view event gave viewers a brief respite from the throes of COVID-19 to watch enormous athletes punch each other. Similarly, few could forget the February 22, 2020, rematch between Deontay Wilder and Tyson Fury, II in which Fury rose from a would-be knockout—against all odds and the overwhelming advice of medical professionals—to beat Wilder in a come-from-behind fight for the ages. Patrons of Fort Worth's "Tastebuds Live" won't forget either match, as Tastebuds televised both fights. But Tastebuds didn't pay the fee required to air the fights at a commercial establishment, which brings us here.

Though it wasn't much of a fight, let's check in with our contenders. In one corner we have Defendants 7 Stars Liquor, LLC and Iris Russell, the legal entity and entrepreneur doing business as Tastebuds. In the other is Plaintiff Joe Hand Promotions, Inc., the holder of exclusive rights to sublicense the referenced fights to commercial establishments in Texas. Joe Hand struck first in this match, suing Defendants on

January 28, 2023, for violations of the Federal Communications Act. Defendants were served but never filed an answer or other responsive pleading. The Clerk entered their default on May 30. Thereafter, Joe Hand struck again, moving for default judgment on July 13. Defendants threw in the towel after Joe Hand moved for default judgment, appearing once in this matter to "request leniency" from the Court. As Defendants have confirmed proper notice of the Motion and damages are readily calculable, a formal hearing is unnecessary.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for default judgments. If a defendant doesn't "plead or otherwise defend" against a claim, the Clerk must enter default upon a requisite showing from the plaintiff. *See* FED. R. CIV. P. 55(a). Rule 55(b) establishes how an entry of default becomes a default judgment. Broadly speaking, Rule 55(b)(1) applies where the defaulting party hasn't appeared; 55(b)(2) applies where the party appeared but defaulted. For the former, the Clerk can enter judgment if damages are readily calculable from the pleadings; for the latter, the Court enters judgment where appropriate upon timely motion from the plaintiff. Still, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (cleaned up).

Consistent with Fifth Circuit policy favoring judgments on the merits, default judgments are highly disfavored. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The default-judgment analysis is three-pronged. *First*, the Court asks if default judgment is procedurally proper. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).[1] *Second*, the Court "assess[e]s the

---

[1] The Court addresses this question with an eye toward six considerations: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the Court would think itself obliged to set aside the default on the defendant's motion." *Id.*

2

substantive merits of the plaintiff's claim and determine[s] whether there is a sufficient basis in the pleadings for the judgment." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015) (noting default judgments "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings" (cleaned up)). *Third*, the Court determines what relief is proper. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002). In doing so, the Court assumes the plaintiff's uncontested allegations are true, except those regarding damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## ANALYSIS

The Clerk entered default on May 31 and Joe Hand timely moved for default judgment on July 13. *See* ECF Nos. 12, 13. But "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default," *Lewis*, 236 F.3d at 767, so the Court must still determine if default judgment is warranted. As explained below, it is.

### A. Default judgment is procedurally proper.

Because default judgments are highly disfavored, the Court must ensure Joe Hand crossed its *t*'s and dotted its *i*'s procedurally. While this may seem like judicial nit-picking, the Fifth Circuit strongly favors judgments on the merits rather than on procedural technicalities like default. *See Sun Bank of Ocala*, 874 F.2d at 276. Put differently, nobody should lose a fight until they've had a chance to swing. To ensure both sides got their fair chance in the ring, the Court examines the six *Lindsey* factors. *See* 161 F.3d at 893. Having done so here, the Court finds default judgment procedurally proper.

#### 1. Material Issues of Fact.

Default judgments are improper where material issues of fact remain notwithstanding a defendant's default. *Lindsey*, 161 F.3d at 893; *see also id.* at 895 (considering only "purely factual material relating to the merits of the [claim]" (cleaned up)). No such issues exist here. As explained below, *infra* pp. 6–8, Defendants' default means the Court

3

must assume the truth of Joe Hand's allegations (save those relating to damages). As Joe Hand's allegations are all factually supported, no material issues of fact remain to render default judgment improper. *Id.* Joe Hand lands a strong punch.

### 2. Substantial Prejudice.

Default judgments are also improper if they would substantially prejudice a litigant's rights. *See Lindsey*, 161 F.3d at 893. Here, Defendants' refusal to engage the litigation process substantially prejudiced Joe Hand's rights. Joe Hand sued Defendants in January and has been precluded from recovery for over eight months. *See* ECF No. 1. Needless delay is substantially prejudicial. *See Sun Bank of Ocala*, 874 F.2d at 276–77. On the flip side, nothing indicates Defendants would be unfairly prejudiced by a default judgment considering they eschewed all previous opportunities to contest the allegations against them. Indeed, had Defendants shown prejudice in their "Request for Leniency," *see* ECF No. 15, this factor would cut against default judgment. But they didn't, meaning Joe Hand lands another punch.

### 3. Clearly Established Grounds for Default.

Default judgments can only stand on bedrock; a foundation of sand will not suffice. Because default judgments are "resorted to by courts only in extreme situations," the slightest uncertainty as to the grounds for default will defeat judgment. *See Sun Bank of Ocala*, 874 F.2d at 276. Here, however, Joe Hand came out swinging. As detailed further below, every required ground for default judgment has been satisfied. *See infra*, pp. 6–8. The grounds for a default judgment are clearly established, and Joe Hand has the upper hand.

### 4. Good Faith Mistake & Excusable Neglect / Harshness.

The Court is unaware of any case law worth its salt explaining how *Lindsey*'s "good faith mistake and excusable neglect" prong is distinct from the "harshness" prong. All judgments are harsh for the losing party—default judgments even more so. But if a defaulting party can show they defaulted because of a "good faith mistake" or "excusable neglect," a default judgment may be too harsh. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (collecting cases

4

to demonstrate examples of "excusable" neglect). Here, the record is devoid of any evidence suggesting "excusable neglect" caused Defendants' default. They were served with process (ECF Nos. 9, 10) and had every opportunity to contest Joe Hand's claim. They failed to do so.

Whatever "excusable" neglect may mean; it doesn't mean outright refusal to litigate a case. It's hard to land a punch if you never swing your gloves. The Fifth Circuit has clarified that neglect isn't excusable where there's a "clear record of delay or contumacious conduct." *Sun Bank of Ocala*, 874 F.2d at 277. Here, "contumacy" is lawyer-speak for stubborn or senselessly uncooperative. And that's what Defendants have been by making no efforts to try this case but asking for leniency after Joe Hand moved for default judgment. Even then, Defendants' Request for Leniency didn't attempt to excuse their default (or even defend against Joe Hand's claims). *See* ECF No. 15. In the absence of any such showing, Joe Hand strikes another blow.

5. The Court's Obligation to Set Aside Default Judgment.

The final consideration under *Lindsey* asks "whether the court would think itself obliged to set aside the default on the defendant's motion." *See* 161 F.3d at 893. This consideration is inherently subjective, as one court may "think" something entirely different from another under the circumstances of a given case. In any event, considering every other factor from *Lindsey* favors default judgment, the Court would be disinclined to change its mind if Defendants moved for reconsideration. Accordingly, Joe Hand lands a decisive blow, establishing default judgment is procedurally proper.

**B. Default judgment is warranted for Joe Hand's claims.**

Default judgments must be warranted procedurally and substantively. *See Nishimatsu*, 515 F.2d at 1206. Having addressed procedural propriety, the Court now turns to the substantive merits of Joe Hand's claims. Even accepting Joe Hand's uncontested allegations as true, the Court must scrutinize the pleadings to determine if default judgment is warranted. You don't get the prize money merely by following rules—you still have to be the better fighter. As shown below, default judgment is substantively warranted for Joe Hand's claim.

5

Section 605 of the Communications Act governs the "unauthorized publication or use of communications." 47 U.S.C. § 605. In relevant part, Section 605 states:

> No person not being authorized by the sender shall intercept any radio communications and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communications to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

*Id.* Evidence of record shows Joe Hand had rights to sublicense the relevant fights to Defendants, but Defendants didn't pay the fee. *See, e.g.*, ECF Nos. 14-2 at 2, 6–8; 14-3 at 1–14. It's also clear that Defendants televised the Tyson-Jones and Wilder-Fury matches discussed above. *See* ECF Nos. 14-6 at 1–5, 14-8 at 1–4, 14-9 at 1–4. Thus, Defendants are on the hook for conveying an "intercepted communication" within the meaning of the Act. *See* 47 U.S.C. § 605.

### C. Joe Hand is entitled to $20,000 in damages, $2,500 in attorneys' fees, and $627 in costs.

Joe Hand seeks damages, attorneys' fees, and costs for Defendants' violations of the Communications Act. *See* ECF Nos. 1, 13. The Court addresses them in that order below.

1. <u>Statutory Damages.</u>

Under Section 605(e)(3), Joe Hand may elect to recover either "the actual damages sustained or the statutory damages for each violation, in a sum of not less than $1,000 or more than $10,000." Because actual

damages are hard to prove in these circumstances, Joe Hand seeks statutory damages. *See* ECF No. 13 at 14–16. While damages between $1,000 and $10,000 may seem harsh for something as simple as showing pay-per-view fights without paying the fee, the statutory range is intended to remunerate for ill-gotten gains *and* deter future breaches. Pay-per-view violations are a serious problem when marquee fights can pull in enormous business for establishments like Tastebuds. Thus, the Court must determine damages with one eye toward remunerating Joe Hand and another eye toward preventing future violations.

With economic incentives to violate the Communications Act, a slap on the wrist doesn't have much deterrence factor. Say Tastebuds had a capacity of roughly one hundred people—in that case, the fee for Wilder-Fury would be $1,450 and the fee for Tyson-Jones would be $1,000. *See* ECF Nos. 13 at 10; 14-2 at 1–2. If statutory damages don't considerably outsize those fees, more establishments may be tempted to take the "ask forgiveness, not permission" approach. Here, given the relatively small size of the establishment and factoring in the fees Defendants avoided, the Court determines $10,000 in statutory damages is warranted— $5,000 for each fight. While that's half the amount Joe Hand seeks, it represents five times the fees Defendants avoided paying. The Court determines a multiplier of five is likely to deter future violations, especially considering Defendants' recent track record of compliance. *See* ECF No. 15. While current compliance doesn't right the wrong of past noncompliance, default judgments require the exercise of judicial discretion. *See Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). And Joe Hand's request for $20,000 in statutory damages—*before* punitives and attorneys' fees—would be punching below the belt.

In addition to the statutory base, the Act allows for heightened damages if a violation was "willful" and "for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). There's no doubt that was the case here, as Defendants broadly advertised the fights on social media and photographs/videos of Tastebuds on the relevant nights reveals a raucous crowd and a busy bar. *See* ECF Nos. 14-6 at 1–5, 14-8 at 1–4, 14-9 at 1–4. Every nickel Tastebuds earned on those fight nights was taken at least partially from

7

Joe Hand's coffers. Further, the breadth of Defendants' advertisements suggests this wasn't a spur-of-the-moment lapse in judgment; it was a premeditated violation. *See id.*

Joe Hand extensively briefs considerations that suggest increased damages are fitting, from the number of televisions at Tastebuds, to its urban location, to the sales generated at the establishment and Defendants' prior violations of the Act. *See* ECF No. 13 at 21–23.[2] The Court finds these considerations persuasive and is unpersuaded by Defendants' observation that they have complied with the Act for all televised fights since then. *See* ECF No. 15 at 1–2. Evidence of record speaks to at least the following factors: (1) the number of violations, (2) the number of TVs at Tastebuds, (3) the food and drinks served, and (4) the city of broadcast. *See* ECF Nos. 14-6 at 1–5, 14-8 at 1–4, 14-9 at 1–4, 14-10 at 1, 14-11 at 1, 14-12 at 1, and 14-13 at 1. The evidence supports certain assumptions about the remaining factors, including Defendants' financial gain from the violation, but doesn't establish them with enough specificity for default judgment. *See U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1013–16 (5th Cir. 1987) (requiring more specific showing of damages for default judgment).

While Defendants' pivot to law-abiding is admirable, it doesn't alter the analysis for their prior unlawfulness. The Court thus determines the damages for each unlawfully televised fight should be doubled. Accordingly, the Court **GRANTS** Joe Hand's Motion and **AWARDS $20,000** in **statutory damages**. *See* 47 U.S.C. § 605(e)(3)(C)(ii).

---

[2]Joe Hand's briefing tracks the considerations outlined in *J&J Sports Prods., Inc. v. River Park Sports Bar, Inc.*, which this Court endorses. *See* No. CV H-15-2638, 2016 WL 6398491 (S.D. Tex. Oct. 28, 2016). These factors include: (1) the number of violations, (2) the number of television sets on which Defendants broadcast the event, (3) the food and drinks they sold to their patrons, (4) the amount of the cover charge, (5) whether it was broadcast in a city where it would impact more potential customers, (6) repeated violations over an extended period of time, (7) substantial unlawful monetary gains, (8) advertising the broadcast, and (8) charging an admission fee or charging premiums for food and drinks. *Id.* at *9.

    2.    <u>Attorneys' Fees & Costs.</u>

Joe Hand also seeks attorneys' fees and costs, to which it is entitled under Section 605(e)(3)(B)(iii). *See* ECF No. 13 at 24. The record contains appropriate evidence of $2,500 in attorneys' fees. *See* ECF No. 14-20 at 2–3 (outlining 10 hours of work at $250/hour). The record also contains appropriate evidence of $627 in costs. *Id.* at 4 (reflecting a $402 filing fee and $225 in fees related to service of process). With the record's clarity vis-à-vis these amounts, the Court **GRANTS** Joe Hand's Motion and **AWARDS $2,500** in **attorneys' fees** and **$627** in **costs**.

## CONCLUSION

There are rules in boxing. The sport articulates standards for where and when an opponent may strike and how strikes are scored. Each fighter in the ring is given a fair shot to land their blows and fight their best fight. But when the final round is over, its over. The gloves go down. Similarly, there are rules in litigation. The Federal Rules of Civil Procedure articulate standards for fair conduct, ensuring each litigant can land their arguments and fight their best fight. But if one party never swings, the fight is pretty short. *See* FED. R. CIV. P. 55. Here, Joe Hand came out swinging but Defendants never fought back. Default judgment is therefore appropriate, both procedurally and substantively. Accordingly, for the reasons above, the Court **GRANTS** Joe Hand's Motion and **AWARDS $20,000** in **statutory damages**, **$2,500** in **attorneys' fees**, and **$627** in **costs**.

**SO ORDERED** on this **4th day of October 2023.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE